**In the Matter of DEFOE SHIPBUILDING COMPANY—Local 49, Industrial Union of Marine and Shipbuilding Workers of America, AFL–CIO, Employees' Pension Plan.**

**PENSION BENEFIT GUARANTY CORPORATION, Plaintiff-Appellee,**

**v.**

**DEFOE SHIPBUILDING COMPANY, Defendant-Appellant.**

**Nos. 78–1280, 79–1007.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 11, 1980.

Decided Jan. 21, 1981.

**312**

James E. Beall, Clark, Klein & Beaumont, Detroit, Mich., for defendant-appellant.

Henry Rose, Gen. Counsel, Washington, D. C., Barry S. Slevin, E. Calvin Golumbie, Christine C. Nettesheim, Mitchell L. Strickler, Karen Clark, James N. Dulcan, William Hanrahan, Debra L. Feuerwerger, Lois Brickner, for plaintiff-appellee.

Before KEITH and MERRITT, Circuit Judges and CELEBREZZE, Senior Circuit Judge.

MERRITT, Circuit Judge.

This case concerns the application of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.*, upon the termination of a retirement pension plan. The Plan was established in 1970 under a collective bargaining agreement between appellant Defoe Shipbuilding Co. and Local 49 of the Industrial Union of Marine and Shipbuilding Workers of America. It was renewed in 1973, but upon expiration of this agreement in 1976 no new agreement between the parties was entered into. After going out of business and filing for dissolution, Defoe terminated the Plan as of January 1977.

The Plan provided for contributions by Defoe to a Trust Fund at a fixed rate per employee per working hour, and the Fund was administered by a board of administration whose members were appointed by the Union and Defoe. The level of benefits to be paid to participants was fixed initially, but was to be adjusted upon recommendation by an appointed Actuary when his analysis revealed that benefit levels no longer appeared appropriate in relation to the level of contributions. The Plan also contained sections defining the employer's liability:

> In the event of termination of the Plan ... accrued benefits shall be non-forfeitable to the extent funded ....

> \* \* \* \* \* \*

> Deposits by the Company with the Trustee of contributions computed in accordance with Section 1 of this Article [setting forth the contribution schedule] shall be in complete discharge of the Company's financial obligation under this Plan. The Company shall have no liability in respect to payments under the Plan except to pay over to the Trustee such contributions .... Each employee or retired employee ... shall look solely to the Trust Fund for any payments or benefits under the Plan.

Upon termination of the Plan, Defoe notified appellee Pension Benefit Guaranty Corp. of its conclusion that Title IV of ERISA, 29 U.S.C. § 1301 *et seq.*, establishing PBGC and procedures for termination of pension plans and defining employer liability, does not govern the Plan. Upon application by PBGC to the district court, the court, in March 1978, held the Plan to be subject to Title IV. PBGC was appointed Trustee of the Plan and directed to pay benefits according to 29 U.S.C. § 1322. Defoe appealed from the order. In addition Defoe filed a motion with the district court

under Fed.R.Civ.P. 60(b)(6) for clarification of the order, specifically requesting the court to explain how the amount of benefits PBGC was to pay participants would be determined, and whether PBGC's payments would exceed the Plan's assets at the time of termination. The court refused to render such a clarification, stating that to do so before PBGC acted would be to deliver an advisory opinion. Defoe appealed this decision as well, and the cases were consolidated.

Two issues are raised in this appeal: (1) Is the Plan a "defined benefit plan" covered by Title IV, or is it a "defined contribution plan" (also termed an "individual account plan") excepted from coverage by 29 U.S.C. § 1321(b)(1)? (2) Are the "nonforfeitable" benefits guaranteed by PBGC to participants according to § 1322(a) limited to the amount of assets present in the Fund at the time of termination of the Plan, or do they include the full level of benefits established in the Plan despite the fact that that level exceeds the assets of the Fund? The second question presents the central issue of this case, because if PBGC makes payments that exceed the assets in the Fund, Defoe may be held liable to PBGC for the insufficiency of the assets to cover payments, to a maximum of 30% of Defoe's net worth. 29 U.S.C. § 1362.

On the first issue, Defoe argues that the Plan is of the defined contribution type. It notes that the employer's contributions to the Plan were fixed by the collective bargaining agreements at a certain amount per employee per working hour. On the other hand, Defoe argues, although rates for calculating the benefits were set in the agreements, the benefits were not defined. This is because they were to be adjusted on occasion according to the recommendations of the Actuary.

This argument misconceives the nature of these two categories of pension plans. The definition of a defined contribution plan, incorporated by reference in 29 U.S.C. § 1321(b)(1) for the purpose of determining exemption from Title IV, is found at 29 U.S.C. § 1002(34):

The term "individual account plan" or "defined contribution plan" means a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account . . . .

In *Connolly v. PBGC*, 581 F.2d 729 (9th Cir. 1978), *cert. denied*, 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 492 (1979), the court, in discussing the same issue, derived from the quoted definition two criteria: a separate account for each participant must exist, and a participant's benefits must be measured solely by the level of funds in his account. The *Connolly* court found that a pension plan very similar to the present one failed to satisfy either criterion, for the employer's contributions were pooled and the participant's benefits defined according to a formula independent of the level of funding.

The Ninth Circuit's development of the definition of "individual account plans" accurately reflects the meaning of the language and makes sense of the reason why that type of plan is exempt from coverage of Title IV. Because benefits in individual account plans are based solely upon the amount contributed to the account, such a plan can never be underfunded and there is nothing for PBGC to insure. A participant is entitled to no more than the amount of benefits in his account. We are also persuaded by the application in *Connolly* of the criteria to the plan under consideration. The same reasoning derives the same conclusion in the present case. The Plan is a "defined benefit," not a "defined contribution" plan.

Defoe's argument that the benefits in the Plan are not fixed because they may be adjusted upon recommendation of the Actuary is irrelevant to this issue. A "defined benefit plan" is defined in 29 U.S.C. § 1002(35) as "a pension plan other than an individual account [or defined contribution] plan . . . ." Since Defoe has failed to demonstrate that the Plan satisfies the criteria for the latter type of plan, it is pointless to argue whether its benefits are fixed. Regardless of the characteristics of the bene-

fits, the Plan must be considered a defined benefit plan in the absence of proof that it is a defined contribution plan.

The second issue concerns the interpretation of 29 U.S.C. § 1322(a), which states that "[PBGC] shall guarantee the payment of all nonforfeitable benefits," thus requiring elucidation of the term "nonforfeitable." Two definitions of that term exist, one at 29 U.S.C. § 1002(19), and one specifically established for Title IV by PBGC under its authority to make regulations. 29 C.F.R. § 2605.6(a). The latter definition in effect equates the conditions of nonforfeitability with the requirements for vesting of benefits.

 In *Nachman Corp. v. PBGC*, 446 U.S. 359, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980), the Supreme Court held that regardless of the choice of definition of the term "nonforfeitable," the same conclusion obtains: the full amount of benefits vested in participants of a plan is nonforfeitable, and hence full payment is guaranteed by PBGC. This conclusion was reached despite the existence of a provision limiting the benefits to the amount of assets in the fund, similar to those, quoted *supra*, found in Defoe's Plan. Such a clause was held to be subordinate to the mandate of ERISA, for a contrary conclusion would subvert the fundamental purpose of the Act, *i. e.*, to protect employees upon termination of their plans with insufficient assets. This court found the *Nachman* decision applicable in the case of *A–T–O, Inc. v. PBGC*, 634 F.2d 1013 (6th Cir. 1980). *Nachman* is decisive in the present case as well. The clauses in the Plan limiting Defoe's liability and limiting the benefits to the extent funded are overridden by the provisions in ERISA identifying the nonforfeitable benefits guaranteed by PBGC.

The existence of a Plan provision allowing the level of benefits to be adjusted upon recommendation of the Actuary gives rise to the question, how may benefits become nonforfeitable if they are subject to change and reduction? This question is resolved by ERISA itself, which contains detailed provisions explaining the method of vesting of benefits and describing minimum and maximum levels of such benefits guaranteed by PBGC. *See, e. g.*, 29 U.S.C. §§ 1053, 1054, 1322(b). Any section of the Plan must be interpreted in harmony with or overriden by these statutory provisions. Thus the Plan's adjustment section cannot operate to reduce the vested—and nonforfeitable—benefits below the statutory minimum. The fact that the Plan provides for adjustment of benefits may perhaps make their ascertainment more complex, but it does nothing to upset their nonforfeitability.

 It would be premature for us to consider the precise level of benefits to be paid, a question which initially addresses the PBGC. In this respect we affirm the district court's refusal to determine the amount of benefits PBGC may guarantee. On the second issue we hold only that no Plan provision can limit the benefits guaranteed by PBGC to a level lower than that required by ERISA. PBGC may guarantee benefits even if the amount guaranteed exceeds the level of assets in the Fund at the time of its termination. With the addition of this holding, the district court's opinion is affirmed.